Good morning, your honors. May it please the court, my name is Amy Nussbaum-Gell. I'm here on behalf of Petitioner Ali Rafagad, a young man from Pakistan who converted to the Shia religion. He suffered past persecution, well-founded future persecution and torture convention, which he could have proved, but for the fact that he did not have a world fair hearing. And I think there are three issues in this case that we want to address. First of all, the denial of the due process under the Fifth Amendment full and fair hearing. Second, the negative credibility finding. And third, the improper review of the torture convention claim. And in this case, before we go into those, are all of those issues exhausted? Yes, I believe that they are. Was the adverse credibility determination addressed in the opening brief? Yes. First of all, I believe that it was addressed in the notice of appeal. And then in the opening brief. In the brief before this court? Oh, yes. Yes, it was. Addressed in the brief before this court. How about in the brief before the BIA? In the brief before the BIA, I believe that the counsel clearly said that there was such a failure of due process. He addressed the issue and he said, normally, I would argue all the facts and compare them to the evidence. But in this case, the record is so severely underdeveloped and there is such such a lack of full and fair hearing and there was no attorney and the judge took the testimony unfairly. So to that point, he said that there isn't even anything really to address at this point. But of course, he was he was saying that the board addressed it, didn't they, in their in their final decision? Yeah, the board, when it came to credibility, only upheld the upheld the the failure to continue and the failure to. The board specifically upheld the adverse credibility determination. They upheld the adverse credibility determination but declined to look at the errors of fact and I believe that he did not fail to raise it. He's just said that the hearing didn't even make it a threshold standard. Could you explain to me your due process argument and how it's does it stand on its own or is it linked to the request to change your venue, which was kind of odd what happened and the request for a continuance? Is it all linked together? Okay, I think that the due process argument is linked together in many respects. The failure to grant a continuance for the attorney, the failure to change venue, the failure to develop the record on the part of the judge who was pro se, the failure of the judge to allow him to have counsel. I mean, he repeatedly asked for counsel. She gave him one continuance at the first master calendar hearing, said, do you want to find counsel? He said, yes, yes, yes. She gave him two weeks when he didn't have counsel. She had him prepare his I-589 by himself, swear to the allegations in the charging document, swear to the contents of the pro se, the asylum application prepared by a friend in the detention center. Then she gave him, then she said that he had to go forward and she gave him a short period of time to go forward on the individual calendar hearing. In the meantime, the respondent, the same judge granted this respondent bond to two, a $35,000 bond to two New York guarantors on the promise that he would live with them in New York. And it took about a month for him, for them to actually post the bond. They posted the bond. He moved to New York and he was given something different. The case was supposed to be moved from the detained calendar to the non-detained calendar. So he was given something, he was given administrative forms to fill out for the change of venue. It was like a clerical transfer, an administrative transfer. Within 10 days of getting to New York, he sent in those forms asking for the case to be changed to New York where he lived. And the government received those opposition to the change of venue. However, for some unknown reason, the immigration court returned to sender and sent it back to the respondent who had to jump on a plane within about a day or two. Hadn't he already hired a lawyer? Excuse me? Hadn't he already hired a lawyer at that point? The lawyer that he hired was only for the bond in California. And in fact, he even asked for that lawyer on the day of the individual when he went back to the detention center where it was mistakenly calendared. And the judge said, no, you can't have that lawyer. That lawyer is just for your bond hearing. And in New York, he had not yet hired a lawyer because he just got there. And the case was supposed to be recalendared for a master calendar hearing and then an individual hearing so that he would have had many, many months to prepare his case. And he needed to have the lawyer to tell him what documents he needed to get. He had no idea what documents he needed to get. He needed a lawyer to counsel him, to put together his identity documents, to see if his identity documents were correct. He then, excuse me one moment. He then flew, but he flew nonetheless to the detention center when he was supposed to be in undetained setting without a lawyer, without any documents to show up in court based on a non-opposition agreement by the government. When he got to court, the judge simply decided to go forward because as she says, she had the time slot, the hour and a half time slot made available. And the government withdrew their agreement to the change of venue. So the respondent was just left alone without counsel. He kept begging for counsel. He was left without his identity documents. He was forced to pull and he was left without his corroborative documents, without witnesses, without an attorney to represent him. And he was forced to pull some documents out of his bag as to his identity that weren't even reviewed, that had arrived in the country after he got here. And then it, furthermore, the judge who made him go forward as a pro se, actually didn't fulfill her duty under, and I have trouble pronouncing it, under Pongaliani. She didn't, she didn't fulfill her duty to Pongaliani on Ninth Circuit 2009, where the duty, where the judge who makes someone go forward pro se has a duty to scrupulously and inquire into and explore all relevant facts. And that's also true in Agamon v. INS. Can I get you to answer my question that I never got the answer to about the opening brief and where the adverse credibility determination was discussed? Yes. Let me find my brief, I'm sorry. For some reason, I know that it was addressed. That adverse credibility determination was challenged in the opening brief. Excuse me? Which specific adverse credibility determination was challenged in the opening brief? All of them, I believe. I think that, I think that what was challenged was... So are you saying you challenged them through your due process argument because none of them were listed? I challenged them specifically in another section as I get to the credibility. Could you point me to the page where a specific adverse credibility determination was challenged, as listed and challenged? Okay. Oh, sorry, I can't see. For some reason, I don't think I have the brief on my desk, although I can tell you that there was an entire section in my brief where I have it. I'm so sorry. I apologize. One moment. Okay. I said that under the totality of the circumstances, it was... But in order to challenge an adverse credibility determination, don't you have to tell us what the adverse credibility determination was and why it's not, why we're compelled to conclude the opposite on it? No, I believe, I believe that perhaps you're right that it was mentioned under the due process section, but the actual, but I did mention all of the things that the judge made a mistake on. Hey, could we turn to the torture claim? Could you point me in the brief where you discussed the torture that was inflicted upon Mr. Ali and why the CAC claim was wrongfully denied? Where is that in your opening brief? Well, in the torture, it was in this section, we said that the BIA and the IJ improperly took into account, didn't make a separate finding on why there would be torture in this case, that they didn't take into account the country conditions in this case. Let me ask you a question, counsel. Yes. If we were to agree with you that there was a due process violation, we should just grant the petition and remand for a do-over, correct? I believe so. Yes. Wait a minute, don't you have to show prejudice? Well, I think actually that you don't have to, in this case, you don't have to show prejudice. First of all, there's a case that I hadn't actually mentioned before, Montez Lopez v. Holder, which carves out an exception to the prejudice that says that if you're denied counsel, that's so fundamentally a violation of due process and you don't have to specifically set forth what the prejudice is because it's so obvious. Furthermore, there are other cases in the Ninth Circuit that set forth the fact that you don't have to specify exactly what the prejudice is. Give me your strongest case for that proposition. Okay. Colmenar v. Ins. Zulon v. Gonzalez. Counsel? Yes. Colmenar, was that cited in your brief? No, that wasn't cited in my brief. Okay, maybe we should... I also believe... Can I mention one case? And I believe it is in the brief, but I don't want to interrupt anyone else. Go ahead. I'm done. I'm not familiar with the Tawa Dress v. Ashcroft, 364 Fed 3rd, 1099. No, I'm not familiar with that case, Your Honor. This is not a but-for or harmless error standard. In proper circumstances, the petitioner need not explain exactly what evidence he would have presented in support of his application, and we may infer prejudice in the absence of any specific allegation as to what evidence petitioner would have presented had he been provided the opportunity to present evidence. Is that your argument? Yes, it is. There's another case that I mentioned in my brief, Gadashi v. INS, but that is my argument, and I thank you. And I'd also like to point out that the BIA, in saying that you had to show prejudice, cited to a case, Zetino, and in that case, that's a case from El Salvador, where the respondent found out, I believe it's El Salvador, found out 10 days before that his attorney had been temporarily suspended, and the judge made him go forward anyway. However, the decision of the judge was actually well-reasoned. He was found credible, and however, the judge denied for lack of nexus. And in his brief, he basically admitted that there was a lack of nexus. So it was a very different situation. In this case, I think the prejudice is obvious. If he didn't have his lawyer, and he didn't have any of his documents, and he didn't have fully reviewed or translated identity documents, it was obviously prejudice, plus the environment. Okay, counsel, we have to let you go way over. We need to hear from the government. Okay. Counsel for the government? Yes, your honors. May it please the court, Eric Quick on behalf of respondent. There are three primary issues before your honors. One is the adverse credibility issue. Was it properly raised on appeal, either in a board brief or in the opening brief? And if we then go to the actual merits of the adverse credibility finding, the inconsistencies between the documents, and then the 10 examples cited by the immigration judge of non-responsive testimony, then we have the motion to change venue and the motion to continue, which in our brief, we treat as distinct issues. With regard to the credibility issue, as we argue in our opening brief, the board finds that it was not adequately challenged on appeal. The opening brief before that, this court doesn't contest that challenge finding either. And we argue as well, the opening brief itself makes no substantive and proper challenge to the adverse credibility issues. But if we look behind all of that at the adverse credibility, as you mentioned, there are two primary ones that are document inconsistencies. There's nothing to do with testimony. One is with regards to Mr. Ali's birth date, or when we see his asylum application on page 166. I have a hard time when the United States agrees to a continuance, a person flies halfway around the country with the expectation that that's, even though it's up to the judge, that the United States made an agreement, and the United States should abide by that agreement, and the United States reneges on that agreement. I have a hard time understanding how that doesn't taint this proceeding. And then you have, on top of that, the petitioner mentioning multiple times that he's not feeling well. So, you know, again, just looking at everything in this case, do you think it's okay for the government to sign a written agreement, not opposing a continuance, and then change its mind in the hearing? Well, Your Honor, if we look at what's going on, to answer your question here, in this hearing, before the DHS counsel even talked about their position on this, because the immigration judge is aware of the position initially, the immigration judge asked Mr. Ali, what evidence you have, because I want to change my case. Mr. Ali, why are you not prepared, the immigration judge asked on 1-07-20. And he says, well, they will help me a little. I will give them money. After my work permit, I will pay them. Then the immigration judge asks, once again, on page 1-07-20, why are you not prepared after seven months? I want to change my case. I do not have money. Then the immigration judge summarizes on 1-08-20, I'm not hearing a lot of good reasons for you to delay your case. You have to show good cause. Then a couple of pages later, DHS is asked their position. At that point, DHS has heard what Mr. Ali has to say. So from the record, it seems that DHS counsel is hearing that there is no good cause. I mean, when I read the transcript, it seemed to me that a lot of his answers were not responsive and were confused. And I just felt like, I'm not sure this guy really understands, he's not sophisticated, the scope of what's being asked, particularly when it seems reasonable for him to have believed that there was going to be a continuance. And, you know, he asks multiple times and says, I don't feel well. So, you know, just as a trial judge, when someone says, I don't feel well, all the red flags go up. And I immediately think, well, I've got a duty to inquire further about this because this isn't just a pro forma thing when you're dealing with some person. So I asked you whether it was acceptable for the government to break its agreement in terms of a continuance, and you told me, I guess, yes. I don't know if it's an agreement or a position at the time before the DHS counsel has heard anything about the reasons. We don't say that it's an agreement. It was a position earlier in the proceeding. Could you clarify one thing for me? So he filed the motion to change venue. The government received it. Apparently, the immigration court returned it to him. Had the immigration court not returned it, is it pretty perfunctory that it just would have been granted as an administrative matter and his case would have been transferred to New York? Well, there are a couple of responses to that, Your Honor. It's not clear from the record that the immigration court rejects it. If we look on page 35 with all of the stamps, it seems as though the U.S. Postal Service has put a return to sender, unable to forward stamp on it for whatever reason. We just don't know from the record why this is. But from the record, I don't believe we can say the immigration court returned it. Let's assume it got filed with the immigration court. Is this kind of a perfunctory kind of matter? Government doesn't allow us to transfer? I think that question goes into the clerical transfer. Uh, argument of the opening brief in which Ms. Gelman made today. I am not aware of a clerical transfer proceeding or process. Notably, the opening brief doesn't give that to us either. You know, I gather you have more familiarity with how this operates than I do. I mean, you know, I'm just curious whether or not it would be. I'm just, I'm just curious whether it would be somewhat a perfunctory. It's not opposed by the government and have been filed with, you know, these things just handled pretty routinely and they get transferred to New York where the petitioner resides. Well, under matter of Roman, we still have to look at a good cause standard as does the we must remember Mr. Ali, the same judge. So I'll reset your case to March 13th. Any supporting documents will be due from either party on February 13th. I'm going to expect you to be ready to do your case on that date, sir. So you should be requesting your documents as soon as possible and hiring an attorney as soon as possible. Otherwise, I'm going to expect you to handle your case and represent yourself on that date. It says on page 101. He's in custody at that time. Is that right? He is in custody. Yes. He also, we should remember from the records on pages 247 and 248, he is given a list of possible pro bono service organizations, both in Odomese, four of those, and then San Diego, five of those. And he signs receipts of that. It's not dated, but in the record, it's between two documents dated November 6th and November 12th. So one could infer from that he received and signed it between those two dates. So he's aware, at least of the possibility of pro bono counsel. We hear that he wants to go to New York and get a work permit as the immigration judge surmises on 112, get a work permit, save money, and then hire a lawyer. Immigration judge, yes, ma'am. Yes, your honor. If we agree that there was a due process violation, is it your position that Mr. Ali would still have to show prejudice? It is your honor. It is both under the, if we're looking at an emotion to continue contact matter of LAVR would tell us that. And from a venue contact matter of Romney would tell us we do need that. As we point out in our brief, however, with regard to the continuance, LAVR, as I've mentioned, nor did it factor. There's no claim of prejudice. There's no claim of abuse of discretion. And notably with the board brief itself, there's nothing to indicate what documents would have been presented or what witnesses would have been presented. There's certainly nothing here from the record indicates an abuse of discretion for either the continuance or the venue issue. There's certainly no prejudice. I guess that is our position. Correct me if I'm wrong, but as I read the brief on appeal to us on this due process issue and the motion to continue and the motion to change venue, I read counsel's argument to be all related. That is the failure to grant a continuance left him on his own at this hearing, essentially unprepared, without any help. He thought that the matter was going to be transferred back to New York and he was forced to go ahead. You read the transcript, it's really not, it's not satisfying at all. That transcript really shows this guy didn't know what was going on. He seems, I believe the judge says he's surprised. The board brief talks about there's an emotional surprise about this, but again, we don't really know what he's going through because there's no affidavit after this to tell us what his subjective intent or perceptions were or expectations were. We just don't know. It's called, he was, he arrived unprepared and he had an emotional shock, says the board brief. That's all we're really told. So what is told by the immigration judge, no matter what, you must be prepared on that March 8th. He told that two months prior. So this cannot have been, at least objectively from the record, a complete surprise. That passage I read from page 201 made fairly clear what that same immigration judge's expectations were. You don't think he might've been surprised when the government filed a non-opposition and then the government, you know, said just the opposite at the hearing? I don't know. We don't know. What do you think from the record? If we find a, can I ask another question? If we find a due process violation, do we still need to decide the adverse credibility question? And how can that possibly be done? If your honors find there are due process violations on both genuine continuance and that prejudice was alleged and demonstrated, if indeed your honors find that requisite, then you do have to get to the adverse credibility. If there is, you determine you don't need the prejudice. You didn't have to at least allege that or show what documents he was going to do or what witnesses he would have brought. Then we don't get to the adverse credibility issue. Sorry, let me just go back for a new hearing. That's essentially what I understand they were asking for. Start over. Exactly. That's what they're asking. We'd have to find, we'd have to find there didn't need to be a showing of prejudice or that the showing was made. That would be correct. And as our brief points out, there's simply nothing on that board brief to tell us what would have, what documents I would have produced, what I would have produced for Mr. Ali. There's just nothing for the board to look at as far as prejudice, but what would happen. So it is our position there from our brief that there was certainly no abuse of discretion there because there was just nothing for the immigration for the board to, to, to, to look at your honors. So would you just summarize for me, let's assume for a moment, there is no due process violation. And what's the government's position as to why there's substantial evidence to support the adverse credibility determination? Well, the, there were really two components to that. Your honor. One was the birth date issue where the asylum application on page one of one 66 has one date in December of 1994 and his birth date or birth certificate on page one 65 has another date in December. Then there's the issue with his mother. The asylum application on page one 69 talks about, uh, about Rita, a keen, that's her name from the village of Java, but his own birth certificate on page one 65 says her name is Zita. Two completely different individuals seemingly. So the immigration judge mentioned both of these. And again, the opening brief doesn't substantially contest that these two document and assistance, these do exist records. So that's certainly sufficient. And then the further, uh, the 10 unresponsive examples that the immigration judge points out, which are not necessarily tied in with any due process challenge. There are things like what, uh, what happens to him in Pakistan? Why would he be killed in Pakistan? Um, why did he convert? Why did it take him nine months to leave Pakistan? All of these unresponsive answers, what was unresponsive about what was unresponsive about why did, why did you convert? Well, he says, well, why did you change? And this is, uh, on page one 41, why did you paint change? And he said, we liked them judge. Well, what did you like? What about them? Did you like, well, I'm not feeling well, your honor. And then the judge says, this is not a difficult question to answer. Uh, why are you having difficulty answered about why you converted? And then the judge says, that's a record reflect. There's no response in a long pause. Um, other than we liked them, there is no, why is that such a, um, why is that such a proper answer? People, uh, you know, a lot of, um, uh, religious organizations provide community services. They are embedded in all sorts of, uh, community functions, medical care, all these things. I mean, to say for an unsophisticated person without follow-up, I like them. I don't find that to be, you know, uh, a strange thing for someone to say. Um, you know, and he says, well, I'm not feeling well. So I don't know. It just, it almost seems like that that's not a good reason. But to me, it seemed like I could understand that they're nice to me. You know, in these kinds of, in a very poor community, you know, we can't apply our own standards. I don't find that answer to be particularly strange. Okay. So council, uh, were any of these, any of these arguments made in the opening brief though, regarding this specific adverse credibility determination? With regard to the 10 non-responsive? With regard to any of the adverse credibility determinations or any of those? We certainly argue, no, not sufficiently. Not at all. Certainly there's nothing. I'm sorry, your honor. Were any of these adverse credibility determinations listed at all in the opening brief? The document inconsistencies were not, I think perhaps the penultimate page, there was a mention it exists, but there's no explanation or allegation that it was improperly found. Some of the 10 or unresponsive issues are, but in a different context, your honor, not in an adverse credibility argument context, but for instance, what documents he waits with them be within that continuance or venue change issue. The others, uh, no, they are not sufficiently responsive in the open entry. I tried to get it. I couldn't do it. Does the court have any other questions? Yeah. Thank you, counsel. We let this go on a little bit long. Um, I'll give petitioner just one minute only. And that's all you get is one minute. Cause we've exceeded our time. Thank you. Thank you. Counsel. Thank you. Turn on your mic council. Okay. We still can't hear you. You're muted. Okay. There you go. You got one minute now. Make it quick. You're still muted. Is that I'm muted now. Now you're okay. You got one minute. Okay. In terms of, of credibility, we addressed in the brief that the causes were caused by the fact that the judge, the judge was, uh, just disagreeing with everything he said, which was actually consistent with his I-589 and his credible fear in terms of the identity document, in terms of the date and his mother's name. That was, there was one document, a birth certificate, which he admitted was wrong. He pulled out of his, it was obtained after he left the country and he pulled it out of his bag and he said it was wrong. His national ID card, his passport, his I-589, his credible fear, all had consistent information. This was one non-fully translated document that she's referring to. That's the two that relates to the mother's name and his name. The mother's name might've been a nickname. He was a guy on his own. He also said that he converted because not only because he liked them, but that he went to the Imam Begar, which is the mosque. Your minute is up. So thank you, counsel. We appreciate your arguments this morning from both sides. Interesting case. The matter is submitted. Thank you.
judges: Paez, Rawlinson, Pregerson